Filed: 10/27/2014 5:34:06 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Amy Mathis Deputy
Envelope ID: 2971835

CAUSE NO. 417-03215-2013

| | | |
|---|---|---|
| TRAXXAS LP, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| TOMMY DEWITT, | § | COLLIN COUNTY, TEXAS |
| EDWIN COULTER DEAN, | § | |
| and LAWRENCE DEAN, | § | |
| | § | |
| *Defendants.* | § | 417th JUDICIAL DISTRICT |

CAUSE NO. 417-03582-2014

| | | |
|---|---|---|
| TRAXXAS LP, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| HANS BECK, Individually and d/b/a | § | |
| MEDIALPRO USA, JONATHAN | § | COLLIN COUNTY, TEXAS |
| BECK, Individually and d/b/a | § | |
| MEDIAL PRO USA, TOMMY | § | |
| DEWITT, and GARY DEWITT | § | |
| STEFAN ENGELEN, PATRICK | § | |
| ENGELEN, JSP GROUP INT'L, | § | |
| BVBA f/k/a PRO MODELS, BVBA, | § | |
| and MEDIAL PRO, BVBA | § | |
| | § | |
| *Defendants.* | § | 417th JUDICIAL DISTRICT |

**PLAINTIFF'S CONSOLIDATED PETITION**                     **PAGE 1**

## PLAINTIFF'S CONSOLIDATED PETITION[1]

Plaintiff Traxxas, LP ("Plaintiff" or "Traxxas") files this Consolidated Petition against Defendants Tommy DeWitt ("Tommy DeWitt" or "Tommy"), Edwin Coulter Dean ("Coulter Dean"), Lawrence Dean ("Lawrence Dean"), Hans Beck ("Hans"), Jonathan Beck individually and d/b/a Medial Pro USA ("Jon"), Gary DeWitt ("Gary") (collectively, "Defendants") and Stefan Engelen ("Stefan"), Patrick Engelen ("Patrick"), JSP Group International, BVBA f/k/a Pro Models, BVBA ("Pro Models"), and Medial Pro, BVBA ("Medial Pro") (collectively "Belgian Defendants") and would respectfully show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Discovery is to be conducted under Level 3 of the Texas Rules of Civil Procedure.

2.    Plaintiff seeks in excess of $1,000,000.00 from all Defendants.

### II.    ADDITIONAL DEFENDANTS

3.    Defendant Tommy DeWitt is a resident of the State of Texas and has appeared in this action.

4.    Defendant Edwin Coulter Dean is a resident of the State of Texas and has appeared in this action.

---

[1] Pending is an Agreed Motion to Consolidate the two above-styled cases. In the event the Court denies consolidation, Plaintiff requests leave to separate these claims as appropriate in the two existing suits.

**PLAINTIFF'S CONSOLIDATED PETITION**                                    **PAGE 2**

5.      Defendant Lawrence Dean is a resident of the State of Texas and has appeared in this action.

6.      Defendant Hans Beck is a resident of the State of Texas and has appeared in this action.

7.      Defendant Jonathan Beck, individually and d/b/a Medial Pro USA is a resident of the State of Texas and has appeared in this action.

8.      Defendant Gary DeWitt is a resident of Collin County, Texas. Gary DeWitt may be served with process at his home, 1523 Faringdon Drive, Plano, Texas  75075, or wherever he may be found.

9.      Defendant Stefan Engelen is a citizen of Belgium who may be served with process in accordance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Convention"), at his home or home office located at Geelseweg 80, 2250, Olen, Belgium, or wherever he may be found.

10.      Defendant Patrick Engelen is a citizen of Belgium who may be served with process in accordance with the Hague Convention, at his home or home office located at Grote Steenweg 41, B-2431 Laakdal, Belgium, or wherever he may be found.

11.      Defendant JSP Group International, BVBA f/k/a Pro Models, BVBA is, upon information and belief, a Belgian company involved in the international

distribution of radio-control model products and accessories.  Pro Models may be served with process in accordance to the Hague Convention, by serving its Chief Executive Officer, Stefan Engelen, at his home or home office Geelseweg 80, 2250, Olen, Belgium, or wherever he may be found.

12.     Defendant Medial Pro, BVBA is, upon information and belief, a Belgian company involved in the manufacture and distribution of certain radio-control model products and accessories.  Medial Pro may be served with process in accordance with the Hague Convention, by serving its sole owner, Stefan Engelen, at his home or home office located at Geelseweg 80, 2250, Olen, Belgium, or wherever he may be found.

### III.        JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Gary DeWitt because he lives in Collin County, Texas. The remaining Defendants, except for the Belgian Defendants, have answered and submitted to the jurisdiction of this Court.

14.     This Court has personal jurisdiction over the Belgian Defendants because, among other things: (a) in 2009, Pro Models solicited and ultimately filed an application to become a distributor for Plaintiff Traxxas, a Texas limited partnership with its principal place of business in Texas, and one or more of its partners are domiciled in Texas; (b) from 2009 until 2014, Pro Models submitted purchase orders to Traxxas in Texas, and subsequently made payments to Traxxas

**PLAINTIFF'S CONSOLIDATED PETITION**                                   **PAGE 4**

in Texas; (c) Pro Models, through its representative Stefan, made multiple trips to Texas for the purpose of soliciting business from Traxxas in Texas; (d) Stefan not only made multiple telephone calls and directed other communications to Texas, but he also received confidential information from Traxxas in furtherance of the conspiracy described below; (e) Medial Pro, beginning as early as 2012, maintained a bank account in Texas; (f) Medial Pro received and sent money for its products through this Texas bank account; (g) Medial Pro maintained at least one employee in Texas; (h) Medial Pro's principals acted in furtherance of the conspiracy by engaging in tortious activities directed towards Texas; and (i) Patrick, on behalf of Pro Models and/or Medial Pro, made multiple calls and directed other communications to Texas in furtherance of the conspiracy described below.

15.     The Belgian Defendants have committed torts in whole or in part in Texas, and Plaintiff's causes of action arise in whole or in part as a result of Supplemental Defendants' contacts with Texas.    Therefore, this Court has jurisdiction over this case and these Supplemental Defendants in accordance with Texas Civil Practice and Remedies Code §17.042.

16.     Venue is proper in this Court pursuant to Section 15.001, et seq. of the Texas Civil Practice and Remedies Code because Defendants Tommy and Gary DeWitt live in Collin County, Texas, and because all or a part of the facts giving

rise to the claims asserted in this case occurred in Collin County.

## IV.   FACTS APPLICABLE TO ALL COUNTS

17.   **Traxxas' Business.**   Traxxas creates, designs, and manufactures hobby-class radio controlled cars, trucks, and boats in both nitro and electric categories.   Traxxas was started in 1986 and pioneered the first fully assembled, hobby-class remote controlled car.   For the past several years, Traxxas has been and continues to be the number-one selling name in ready-to-run nitro and electric models.

18.   **Defendants.** Defendants Tommy DeWitt, Gary DeWitt, Hans Beck, Jon Beck, Coulter Dean and Lawrence Dean are all former employees of Traxxas.

Tommy DeWitt: Director of Sales at Traxxas from 2008-late July 2013

Hans Beck: Worked in international sales at Traxxas from 2008-late July 2013

Jon Beck: Worked for Traxxas from 2008 - 2012

Counter Dean: Worked for Traxxas in customer support, repairs, engineering, and direct sales starting in 2006. Leaves Traxxas and now works for Tommy DeWitt.

Lawrence Dean: Worked for Traxxas from 2010-2012 in warehouse support and marketing.

19.   **Belgian Defendants.** Stefan and Patrick Engelen are the owners of JSP Group International, BVBA, formerly known as Pro Models, BVBA and Medial Pro, BVBA. Pro Models, for the relevant time period, distributed Traxxas

**PLAINTIFF'S CONSOLIDATED PETITION**                                    **PAGE 6**

R/C vehicles. Medial Pro was in the business of selling R/C vehicle accessories, such as tires, oil, and tools. These Belgian Defendants conspired with Defendants to usurp Traxxas' business opportunities, and, in so doing, tortiously interfered with Tommy DeWitt and Hans and Jon Beck's employment agreements.

20.     **Tommy DeWitt – the hub of the web of deceit.** Tommy DeWitt was a car salesman who came to work in sales at Traxxas in 2008. From the minute he started, DeWitt has delusions of grandeur. DeWitt ingratiated himself with Traxxas' owner and high level executives. Tommy was promoted to General Manager and Director of Sales. In reality, this was a campaign of deception and manipulation. While Traxxas thought Tommy DeWitt was a loyal employee, he really was using Traxxas time and resources, to plan his own side businesses, all in violation of his non-compete.

21.     **Tommy DeWitt pulls in his "right hand man," Hans Beck.** Within less than two years of starting employment at Traxxas, Tommy DeWitt began communicating with Defendant Hans Beck, who also worked at Traxxas, regarding a side business. DeWitt bragged to Hans in the summer of 2010 that he may be "running 2 companies for awhile."

22.     Even though DeWitt and Hans Beck had employment contracts with restrictive covenants, and even though both of them had been employed by Traxxas for years in managerial roles, as early as fall 2010, there are

**PLAINTIFF'S CONSOLIDATED PETITION**                    **PAGE 7**

communications between Hans and Tommy about setting up a business called "Bolt" with Defendant Stefan Engelen, who was a distributor for Traxxas Products.

23.     DeWitt's and Hans' communications show that this business was going to compete with Traxxas. Hans tells DeWitt on one occasion "We cannot sell direct here booth next sells Traxxas and has sold out over 20 car." Around the same time, Hans asks Tommy, "Hey Tommy do you have a personal email address. I don't want to send anything anything [*sic*] about these motors through Traxxas."

24.     **Gary DeWitt Joins the Conspiracy.** Tommy DeWitt's father, Gary DeWitt, had been employed for some time as an engineer at Traxxas. While he was supposed to be dedicating his time and professional efforts to Traxxas, Gary DeWitt was consulting with and providing support to his son's side business.

25.     **Jon Beck Joins the Conspiracy.** By the following summer, Hans has looped his son Jon into the scheme to compete with Traxxas, which, at this point, has morphed into international distribution for R/C vehicle accessories. Hans, Jon, and Tommy were using confidential information and customer relationships of Traxxas in order to expand their side business. Like Hans and Tommy, Jon Beck had an employment agreement with a restrictive covenant.

26.     These plans, in time, change to Jon running an American arm of Belgian company Medial Pro, which is owned by Stefan and Patrick Engelen. As

**PLAINTIFF'S CONSOLIDATED PETITION**                                      **PAGE 8**

Medial Pro USA, Jon, with Hans' assistance and upon information and belief, Tommy's assistance and approval, began marketing and selling R/C Accessories. This plan was in violation of both employment agreements and these individuals' fiduciary duties to Traxxas. Jon, Hans, and Tommy all knew this side business was improper, as evidenced by their repeated communications *not* to use Traxxas email accounts to discuss the business.

27.   By early 2012, Jon leaves Traxxas and begins doing Medial Pro full time. While Hans and Tommy remain at Traxxas, they are involved participants. Throughout this process, Hans and Tommy are in constant communication with Stefan. Tommy, ostensibly to have plausible deniability as to this scheme, conveys his questions and concerns to Sefan via Hans.

28.   In 2013, Traxxas discovers that Jon Beck is doing business as Medial Pro and, through counsel, demands that Jon stop. He doesn't.

29.   **Tommy leaves Traxxas but, before doing so, steals and deletes company property**. By summer 2013, without telling Traxxas, Tommy DeWitt is making plans for his departure. He begins talking to individuals about employment opportunities at his new business ventures. In late July 2013, Tommy makes demand upon Traxxas' owner, Mike Jenkins, that he be given the job title of COO and a dramatic increase in pay. When Mr. Jenkins declines the demand, Tommy resigns.

30.    At the time of his resignation, Tommy DeWitt had access to the most confidential of Traxxas' proprietary information. As a high-level employee and someone Mr. Jenkins trusted, Tommy knew about customers, pricing, and design, among other items.

31.    Mr. Jenkins had also approved Tommy DeWitt taking some R/C vehicles and gifting them to customers, distributors and others for promotional purposes. Tommy instead used these R/C vehicles for his own pecuniary gain.

32.    Again, rather than do his own dirty work, Tommy enlisted Defendants Coulter Dean and Lawrence Dean to sell these R/C vehicles on eBay, where Tommy would pocket the profits. Eventually, Tommy asks Hans if Jon Beck wants to do the selling. Hans agrees, and, upon information and belief, Jon Beck starts selling Tommy's stockpile of stolen Traxxas product. This property included new-in-box Traxxas vehicles worth hundreds of dollars each as well as various component parts, such as motors, engines, radio receivers, and speed controllers. Tommy DeWitt either previously sold or had in his possession over 50 Traxxas vehicles when he resigned in July 2013

33.    In addition, in early 2011, Tommy DeWitt had Traxxas purchase an almost $3,800 Alienware computer for his use. Tommy had one service call on the computer within the first six months of use. In late September 2012, Tommy acquires, at Traxxas' expense, an Apple MacBook Pro, Serial Number

**PLAINTIFF'S CONSOLIDATED PETITION**                         **PAGE 10**

C02JC0FVF51R, Part Number MD831LL/A and stand-alone monitor (the "MacBook"). The Alienware computer was never returned and, upon information and belief, remains in Tommy DeWitt's possession.

34. Worse yet, after Tommy quit, he was to return Traxxas property. Among the items returned was the MacBook computer. Upon inspection, it became apparent that Tommy had deliberately wiped the computer to remove any incriminating evidence. This wiping was also done after Tommy quit Traxxas. As such, Tommy engaged in unauthorized access of Traxxas' computer information.

35. According to the logs and databases maintained by Apple, on or about August 14, 2013, Tommy DeWitt, or someone at his direction, deleted 41,793 emails from the MacBook. He also had over 1,000 documents, pictures, and/or videos that appear related to Traxxas removed.

36. While Tommy DeWitt swears under oath that he did not retain the information he wiped, the evidence adduced says otherwise. All of that information – which is currently the subject of a spoliation motion pending before the Court – is believed to still exist, but DeWitt refuses to produce it.

37. **Tommy re-starts Bolt and tries to "take over" Traxxas**. Even after stealing and destroying Traxxas property, Tommy DeWitt is not content. Tommy DeWitt starts a conglomerate of companies under the banner name of "Bolt" – the same name he used back in 2012. Bolt's businesses range from exotic vehicles to

**PLAINTIFF'S CONSOLIDATED PETITION**                                   **PAGE 11**

dog breeding. DeWitt also has a workout gear business called coreXtreme. All of these ventures are staffed with former Traxxas employees. But these new business ventures were not enough.

38.     In late 2013, Tommy DeWitt hatches a plan to buy out Traxxas. This plan, which ultimately fell through, was done with the participation of Hans and Jonathan Beck as well as Stefan Engelen, on behalf of himself and/or Medial Pro and Pro Models. When Tommy learned that he could not acquire Traxxas, he wanted to compete with it and laid plans to start creating and selling R/C vehicles that would compete with Traxxas.

39.     As of today, the extent of Defendants' competition is unknown due to their destruction of information and failures to supplement prior production.

## V.    CAUSES OF ACTION

**COUNT ONE:     Conversion Against Coulter Dean and DeWitt.**

40.     Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

41.     Traxxas owned property, including R/C cars and computer equipment. Coulter Dean and DeWitt wrongfully took these items and used them for their own benefit, including but not limited to selling the cars for their own pecuniary gain.

42.  Traxxas has suffered substantial injury as a result of Coulter Dean and DeWitt's wrongful acts, which they seek to recover through this action.

**COUNT TWO:   Civil Theft Against Coulter Dean and DeWitt.**

43.  Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

44.  Coulter Dean and Tommy DeWitt unlawfully took Traxxas property with the intent to deprive Traxxas of the Property.

45.  Separate from Coulter Dean, Tommy DeWitt has failed to return an Alienware computer belonging to Traxxas.

46.  Coulter Dean and DeWitt's actions constitute civil theft, including theft of property, as set forth in TEX. CIV. PRAC. & REM. CODE § 134.001, et seq.

47.  Traxxas has suffered substantial injury as a result of Coulter Dean and DeWitt's wrongful acts.

48.  Coulter Dean and DeWitt are liable for penalties as well as actual damages.

49.  Traxxas is entitled to recover its reasonable and necessary attorneys' fees, pursuant to TEX. CIV. PRAC. & REM. §134.005, for which it now sues.

**COUNT THREE:** Breach of Fiduciary Duty Against Tommy DeWitt, Gary DeWitt, Hans Beck, Jon Beck, and Coulter Dean.

50.     Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

51.     During his employment with Traxxas, DeWitt held positions as the General Manager and Director of Sales of Traxxas.   Within Traxxas, these positions provided DeWitt the same rights and responsibilities as an officer. Through DeWitt's position at Traxxas, he owed a fiduciary duty to Traxxas.

52.     Together with Coulter Dean, DeWitt took Traxxas products, sold them, and retained all of the profits, thereby breaching his fiduciary duty to Traxxas.  DeWitt further impaired Traxxas computer equipment by deleting and destroying information.

53.     Together with other Traxxas employees, including Jon Beck, Hans Beck, and Gary DeWitt, Tommy DeWitt put his own pecuniary gain and best interests ahead of that of Traxxas by selling products and accessories that compete with Traxxas.

54.     Tommy and Gary DeWitt, Hans and Jon Beck, and Coulter Dean all breached their duty of loyalty to act solely in Traxxas' best interest.  As a result, these Defendants are liable for damages proximately caused by their conduct in

addition to disgorgement and equitable forfeiture of previously-paid compensation, including benefits.

**COUNT FOUR:** **Tortious Interference with Existing Contract Against the Belgian Defendants.**

55. Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

56. Plaintiff and Tommy DeWitt, Hans Beck, and Jon Beck had valid employment agreements with restrictive covenants.

57. As alleged in detail above, the Belgian Defendants willfully and intentionally interfered with the employment agreements.

58. The Belgian Defendants' interference proximately caused Traxxas' injury.

59. Plaintiff has incurred substantial actual damages because of Supplemental Defendants' actions.

60. Because the Belgian Defendants' interference was malicious, Traxxas is entitled to recover exemplary damages in an amount to be determined by the trier of fact.

**COUNT FIVE:**   Tortious   Interference   with   Prospective   Contractual Relations Against Tommy DeWitt, Gary DeWitt, Hans Beck, Jon Beck, and Belgian Defendants.

61.     Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

62.     There was a reasonable probability that Traxxas would have entered into future distributorships with the companies that the business interests created by the DeWitts, Becks, and Belgian Defendants contacted.

63.     Through their use of misappropriated trade secrets and proprietary information, the DeWitts, Becks, and Belgian Defendants intentionally interfered with those relationships.

64.     The DeWitts', Becks' and Belgian Defendants' conduct was independently tortious and unlawful.

65.     The DeWitts', Becks' and Belgian Defendants' interference caused Plaintiff's injury, as Traxxas has suffered damages and loss.

66.     Because the DeWitts', Becks', and Belgian Defendants' interference was malicious, Traxxas is entitled to recover exemplary damages in an amount to be determined by the trier of fact.

**COUNT SIX:**     Unfair Competition.

67.     Plaintiff restates and realleges the paragraphs above and below as if

**PLAINTIFF'S CONSOLIDATED PETITION**                               **PAGE 16**

fully set forth herein verbatim, and would further show unto the Court the following.

68.     Traxxas created its products and trade secrets through extensive time, labor, skill, and money.

69.     The DeWitts, Becks, and Belgian Defendants obtained and used Traxxas' products and trade secrets unlawfully and through improper means.

70.     The DeWitts', Becks', and Belgian Defendants' use of Traxxas' products and/or trade secrets are in competition with Traxxas, thereby giving these Defendants a special advantage in that competition, because these Defendants are burdened with little or none of the expense incurred by Traxxas.

71.     Traxxas has suffered commercial damages and loss.

**COUNT SEVEN:**          **Breach of Contract against Tommy DeWitt, Hans Beck, and Jonathan Beck.**

72.     Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

73.     Traxxas had binding employment agreements with Tommy DeWitt, Hans Beck, and Jonathan Beck.

74.     These agreements provided, among other things, that these employees would receive confidential information in the course of their employment, and

**PLAINTIFF'S CONSOLIDATED PETITION**                    **PAGE 17**

these employees agreed to maintain that information as confidential and return it at the end of their employment.

76. These employment agreements further provided that Tommy DeWitt, Hans Beck, and Jonathan Beck would not engage in work that would compete with the business of Traxxas while employed by Traxxas and for a period of two years thereafter.

76. Tommy DeWitt, Hans Beck and Jonathan Beck all materially breached these agreements by misappropriating confidential information; failing to return confidential information; and by engaging in business that competes with Traxxas during and after their employment.

77. All conditions precedent to this agreement have been satisfied.

78. As a proximate cause of this conduct, Traxxas has sustained direct and consequential damages, for which they seek recovery from these Defendants.

79. Traxxas also seeks an equitable tolling of the restrictive covenants contained in Tommy DeWitt's, Jon Beck's and Hans Beck's employment agreements so that Traxxas retains the benefit of its bargain.

**COUNT EIGHT**: Theft of Trade Secrets against Tommy DeWitt, Hans Beck, and Jon Beck

80. Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

PLAINTIFF'S CONSOLIDATED PETITION                    PAGE 18

81.    At great time and expense, Traxxas developed the trade secrets and confidential and proprietary information that gave its business a competitive advantage. Hans, Jonathan, and Tommy misappropriated those trade secrets as well as Traxxas' confidential and proprietary business information and has disclosed and used those trade secrets and other information for personal gain.

82.    As a proximate cause of these damages, Traxxas has sustained direct and consequential damages for which they seek recovery from Tommy DeWitt and Hans and Jonathan Beck, including lost profits and/or a reasonable royalty upon such information.

83.    All conditions precedent to all relief sought by Traxxas have been met, performed, occurred and/or been waived.

84.    Because the conduct was malicious and intentional, Traxxas seeks exemplary damages in amounts to be determined by a trier of fact.

**COUNT NINE:**    **Conspiracy and/or Aiding and Abetting Against All Defendants.**

85.    Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

86.    Defendants sought to accomplish all of the unlawful objectives set forth above. Defendants did so through a meeting of the minds on both the object and course of action necessary to achieve their objectives and did so through one

**PLAINTIFF'S CONSOLIDATED PETITION**                                   **PAGE 19**

or more unlawful acts, including the taking and selling of Traxxas property, and establishing and running a competing business, both to the detriment of Traxxas.

87.     Specifically, at issue are two conspiracies: the conversion and sale of Traxxas R/C vehicles and the creation of the competing business interests.

88.     With regard to the sale of Traxxas R/C vehicles, Tommy DeWitt first conspired with Lawrence Dean and Coulter Dean to sell Traxxas property and pocket the sales proceeds. In connection with that conspiracy, Lawrence Dean was aware that Coulter Dean and Tommy DeWitt owed fiduciary duties to Traxxas and knowingly encouraged and assisted them in the breach of those duties by providing Coulter Dean a mechanism to continue selling Traxxas products undetected.

89.     Additionally, Tommy DeWitt conspired with Hans and Jon Beck to sell Traxxas R/C vehicles for their mutual pecuniary gain. Upon information and belief, Jon and Hans Beck knowingly encouraged and assisted Tommy DeWitt in selling these items.

90.     With regard to the third conspiracy, Tommy and Gary DeWitt, Hans and Jon Beck, and the Belgian Defendants conspired with one another to create one or more business entities that directly competed with Traxxas and usurped Traxxas' business opportunities. In addition, in furtherance of that scheme, these co-conspirators misappropriated and used Traxxas information, including customer

lists. Each co-conspirator knowingly encouraged and assisted one another in furtherance of this scheme.

91.    As a result of all of these conspiracies, Traxxas has suffered damages as a result, including the value of its lost property and harm in the marketplace of lost sales.

**COUNT TEN:**    **Declaratory Judgment Against Pro Models.**

92.    Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

93.    An actual and concrete controversy exists between Traxxas and Pro Models, as Pro Models asserts that, pursuant to a contract with Traxxas, Traxxas must provide notice before termination and a certain transition period.

94.    Traxxas seeks a declaration that no such contract or right exists as between Traxxas and Pro Models.

95.    Pursuant to Chapter 37 of the Texas Civil Practices & Remedies Code, Plaintiff also seeks its attorneys' fees as are just and equitable.

**COUNT ELEVEN:**    **Violation of the Computer Fraud and Abuse Act ("CFAA") against Tommy DeWitt**

96.    Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

**PLAINTIFF'S CONSOLIDATED PETITION**                    **PAGE 21**

97.    Tommy DeWitt, as described above, knowingly accessed one or more Traxxas' protected computers without authorization. DeWitt engaged in this conduct knowingly and with the intent to defraud and, by means of such conduct, furthered his intended fraud.

98.    Tommy DeWitt further, without authorization, accessed one or more protected computers and caused damage thereto by, inter alia, duplicating and erasing data from Traxxas' computer(s).

99.    This conduct constitutes a violation of 18 U.S.C. §1030, for which Traxxas seeks to recover damages, including, as applicable, reasonable and necessary attorneys' fees and costs.

**COUNT TWELVE:**    **Injunctive Relief**

100.    Plaintiff restates and realleges the paragraphs above and below as if fully set forth herein verbatim, and would further show unto the Court the following.

101.    Traxxas incorporates by reference the allegations made in the foregoing paragraphs, as if fully stated herein.

102.    Given Defendants' (a) intentional and widespread misappropriation of Traxxas' trade secrets and confidential and proprietary information and (b) breaches of the confidentiality and non-compete provisions of each of the Defendants' employment agreements with Traxxas, it is likely that, unless

**PLAINTIFF'S CONSOLIDATED PETITION**    **PAGE 22**

enjoined, Defendants will retain, use, or continue using Traxxas' confidential information and will continue breaching obligations owed to Traxxas. Traxxas requests the Court protect against the further dissemination, disclosure, or use of its trade secrets and confidential and proprietary information.

103. Based on the foregoing, Traxxas has shown a probable right to recovery. In addition, it has no adequate remedy at law. Unless Defendants are enjoined, Traxxas will continue to suffer clear, immediate, and irreparable injury by Defendants' use of misappropriated trade secrets and confidential and proprietary information for the purpose of unfairly and unlawfully competing with Traxxas.

104. Traxxas has suffered and will continue to suffer irreparable harm as the result of Defendants' conduct.

105. The harm and loss will continue unless this Court restrains and ultimately permanently enjoins this conduct. Traxxas is therefore entitled to temporary and permanent injunctive relief. As requested below, the Court should enjoin Defendants from taking any action inconsistent with the contractual non-disclosure and non-compete provisions, and the common law and other duties and obligations owed to Traxxas.

106. Traxxas has previously obtained the requested relief sought and re-iterates and does not waive its right to the continuation of this injunction.

**PLAINTIFF'S CONSOLIDATED PETITION**         **PAGE 23**

## VI.  CONDITIONS PRECEDENT

107.  Traxxas has performed all conditions precedent to recovery of its damages, attorneys' fees, and expenses.

## VII.  DISCOVERY RULE

108.  For actions discovered to have occurred in or prior to August 2013, Plaintiff pleads the discovery rule, as it did not become aware of these events until after Tommy DeWitt and Hans Beck left Traxxas.

## VIII. REQUEST FOR DEATH PENALTY SANCTIONS AND/OR SPOLIATION INSTRUCTION

109.  As detailed in Plaintiff's Motion for Death Penalty Sanctions or Spoliation Presumption that has been filed in this Court, Defendants Jon Beck, Tommy DeWitt, and, upon information and belief, Hans Beck caused the destruction of relevant evidence in their possession at a time when they was on notice of potential litigation.  The destruction was intentional and will have the effect of prejudicing Traxxas' ability to present its case and defend against DeWitt's alleged counterclaim.

110.  Plaintiff therefore requests a death penalty sanctions, including adverse instructions to the jury, default judgment on all claims bought by these Defendants, and striking all of their affirmative defenses.

PLAINTIFF'S CONSOLIDATED PETITION                                   PAGE 24

## IX.   JURY DEMAND

111.     Plaintiff demands a trial by jury.

## X.   REQUEST FOR RELIEF

WHEREFORE, premises considered, Plaintiff Traxxas, LP respectfully requests that the Court enter judgment against Defendants as follows:

- Continue to afford Plaintiff the injunctive relief as described above;

- Award Plaintiff direct and consequential damages as set forth herein;

- Award Plaintiff disgorgement and other equitable relief, including but not limited to an equitable tolling of the employment agreements discussed herein;

- Award Plaintiff declaratory relief as set forth above;

- Award Plaintiff exemplary damages;

- Award Plaintiff reasonable and necessary fees and costs, including attorneys' fees.

Plaintiff also requests such other and further relief to which it may be entitled.

Respectfully Submitted,

*/s/ J. Sean Lemoine*
J. Sean Lemoine
Texas State Bar Number 24027443
*sean.lemoine@wickphillips.com*
Elizabeth H. Lemoine
Texas State Bar Number 24027236
*elizabeth.lemoine@wickphillips.com*
Meredith L. Perry
Texas State Bar Number 24075622
*meredith.perry@wickphillips.com*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served on all counsel of record on October 27, 2014, in accordance with the Texas Rules of Civil Procedure.

*/s/ Elizabeth Hosea Lemoine*
Elizabeth Hosea Lemoine